UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOYCELYN DENNISON                              CIVIL ACTION

VERSUS                                          NO. 08-4677

MICHAEL J. ASTRUE, COMMISSIONER OF              SECTION "B" (3)
SOCIAL SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for disability insurance benefits and a period of disability, supplemental security income ("SSI") payments and widow's disability benefits under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that the plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.     Factual and Procedural Background**

Given the complexity of plaintiff's medical history and record, only those facts necessary to the narrow issues on appeal asserted by plaintiff are stated below.

Plaintiff is now a 56-year old woman with a high school education who formerly worked in retail. Plaintiff allegedly suffered a work-related back injury on November 25, 2001. (Adm. Rec.

1

at 257). Plaintiff also reported an earlier back injury that went untreated. (*Id.*).

On September 23, 2002, Dr. Mossadiq Jaffri characterized plaintiff's earlier 2002 lumbar spine diagnostic test as showing significant extradural defects at L2-L3 and L4-L5 with effacement of the thecal sac most prominent at the L4-L5 intervertebral discs. (Adm. Rec. at 274). In an earlier report, dated September 4, 2002, Dr. Jaffri had noted that plaintiff's EMG testing was completely normal and that there was "[n]o electrophysiological evidence of radiculopathy with normal electrophysiological parameters." (*Id.* at 281). Earlier lumbar myelography, reported by Dr. Lawrence Glorioso, also revealed extradural defects at L2-L3 and L4-L5 with effacement of the thecal sac most prominent at the L4-L5 intervertebral discs. (*Id.* at 283-84). A postmyelography CT examination revealed eccentric bulging of the L4-L5 intervertebral disc toward the right side with effacement of the thecal sac. (*Id.* at 284). The same examination revealed no nerve root compromise. (*Id.*).

On January 20, 2003, plaintiff underwent a Psychological/Pain Evaluation by Benjamin Bushman, Ph.D., Clinical Psychologist at the Medical Musculoskeletal Institute. (*Id.* at 252-58). Dr. Bushman noted that throughout the evaluation, plaintiff was consistently oriented to person, place and time. (*Id.* at 254). She walked independently, and Dr. Bushman reported no auditory problems. (*Id.*). Dr. Bushman noted that plaintiff did not exhibit any pain behaviors during the evaluation other that the occasional rubbing of her neck and sighing. (*Id.*). She interacted with Dr. Bushman in a friendly and socially-appropriate manner, her affect was normal, and her emotions seemed stable and appropriate. (*Id.*). Dr. Bushman observed no behavioral evidence of bizarre or unusual thinking. (*Id.* at 254-55).

Dr. Bushman noted that during intelligence testing, plaintiff frequently refused to guess at an answer, even when he prompted her to do so. (*Id.* at 255). During one test, plaintiff successfully recreated correct block designs, but then she would flip one block into an incorrect position and randomly move the blocks around until time expired. (*Id.*). Dr. Bushman opined that such unusual behavior may have had an adverse impact on her overall performance. (*Id.*).

Dr. Bushman concluded that plaintiff suffers from "a Pain Disorder associated with both Psychological Factors and a General Medical Condition, and from a Personality Disorder." (*Id.* at 257). He also opined that she has "long-standing Narcissistic, Schizoid, Histrionic and Paranoid personality features." (*Id.*). He noted that she had reported using a wide range of coping mechanisms, that she felt some control over her pain and that she was "quite effective in decreasing it." (*Id.*). However, he concluded:

> Based on the data from this evaluation, I do not feel that Ms. Johnson is psychologically disabled from working. . . .
> It is felt that while Ms. Johnson is approaching Maximum Medical Improvement at MMI, she should be allowed to collaborate with the treatment team in the setting of work-return goals. It is also felt Occupational therapy would be the most appropriate setting for the teaching of self-regulation and pain coping strategies. If Ms. Johnson resists these interventions and the transition back to gainful employment, secondary gain issues should be more closely examined.

(*Id.* at 257).[1]

On October 20, 2003, plaintiff filed a Title II application for a period of disability and disability insurance benefits. She also protectively filed a Title XVI application for SSI income on the same date. In both applications, plaintiff alleged disability beginning October 25, 2001. Both

---

[1] Ms. Johnson is now Ms. Dennison.

applications were initially denied. On December 11, 2003, plaintiff filed a timely request for a hearing.

On March 1, 2004, plaintiff filed a Title II application for widow's disability benefits. On March 3, 2006, the application for widow's disability benefits was denied. Plaintiff appealed and filed new applications under Title II and Title XVI. The Appeals Council reversed the March 3, 2006 decision and remanded. The Appeals Council also ordered all of plaintiff's claims to be consolidated.

At the request of the ALJ, plaintiff underwent further psychological evaluation by Dr. Alvin Cohen in March 2007. (*Id.* at 398-403). Dr. Cohen concluded that plaintiff was tense and had indicated that she was in pain. (*Id.* at 400). Plaintiff had an intermittent right-leg tremor during the examination. (*Id.*). Dr. Cohen reported that she was goal-directed and coherent, and her mood was pleasant. (*Id.*). He noted that her affect was appropriate and that there was no evidence of delusions or hallucinations. (*Id.*). He reported that her intelligence was adequate, her orientation was intact, and her concentration and attention were adequate. (*Id.*). Dr. Cohen diagnosed plaintiff with chronic pain syndrome, a major depressive disorder, personality disorder NOS, chronic back pain, and opined that she did not have the ability to support herself financially. (*Id.*). Notwithstanding this diagnosis, Dr. Cohen opined that plaintiff's limitations were no more than physical and that mental restrictions were not significant and did not prevent her from returning to work. (*Id.* at 401-03).

On remand, the ALJ held a hearing on December 14, 2006 and again denied plaintiff's applications on May 25, 2007. Plaintiff sought review of the May 25, 2007 denial but withdrew the

4

request on August 2, 2007 in lieu of a request to reopen and reconsider the May 25, 2007 decision. The ALJ vacated the May 25 decision, and the parties appeared at a supplemental hearing on February 27, 2008.

At the supplemental hearing on February 27, 2008, plaintiff submitted records on her alleged psychological symptoms from her treating physicians at the St. Charles Community Health Center. (*Id.* at 492-502; 558). The records appear to contain an initial psychiatrist's report on October 25, 2006, with three follow-up evaluative reports. On October 25, 2006, plaintiff reported that she was depressed and couldn't sleep but the follow-up evaluations reveal that plaintiff was better, her affect was appropriate, and she reported sleeping better and had had no panic attacks. (*Id.* at 492, 496). Plaintiff also reported that her father had died two weeks earlier. (*Id.* at 492). A review of the relevant documents reveals that none of the doctors at St. Charles Community Health Center indicated that plaintiff experienced such significant cognitive defects that would interfere with her ability to work. (*Id.* at 492-500).

On March 3, 2008, and after the hearing, plaintiff sought to submit new and material evidence under a cover letter entitled "Request to Make a Decision." (*Id.* at 116). The evidence is an MRI test result dated March 16, 2007, also attached to plaintiff's motion for summary judgment. The MRI reveals no disk herniation at the L1-L2 level. The MRI demonstrates bulging of the L2-L3 disk, with flattening of the ventral thecal sac and moderate bilateral facet anthropathy. The MRI also revealed mild bulging of the L3-L4 disk with protrusion that was causing mild narrowing of the right neurofarmen compared to the left. At the L4-L5 disk, severe bilateral facet arthropathy was present with a grade 1 spondylolisthesis, some unroofing and mild disk bulging that resulted in

moderate narrowing of the right neuroforamen and mild to moderate narrowing of the left neuroforamen. The L5-S1 disk revealed mild bulging and mild spondylosis and mild facet degenerative changes.

The ALJ did not incorporate the MRI test result into the record. Ultimately, the ALJ again denied plaintiff's applications for benefits on June 26, 2008.

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley*

*v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

**III.     ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but cannot, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B).

The Commissioner has promulgated regulations that provide procedures for evaluating a

claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67

8

F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## IV. ISSUES ON APPEAL

There are four issues on appeal that this Court will address in turn:

(1) Whether the allegedly new and material MRI evidence that plaintiff submitted on March 3, 2008 and that the ALJ failed to incorporate into the record requires a remand to the ALJ to consider the evidence.

(2) Whether the ALJ erred when he did not find that plaintiff has a severe mental impairment.

(3) Whether the ALJ erred when he failed to consult a vocational expert to determine her residual functional capacity ("RFC").

(4) Whether the ALJ violated plaintiff's Due Process rights when he did not swear her in to testify at the supplemental hearing and the supplemental hearing was not before another ALJ.

## V. ANALYSIS

**1. Whether the allegedly new and material MRI evidence that plaintiff submitted on March 3, 2008 and that the ALJ failed to incorporate into the record requires a remand to the ALJ to consider the evidence.**

Section 405(g) provides, in pertinent part, that the courts "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there

is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence that was "not in existence at the time of the administrative and district court proceedings, meets the 'new' requirement for remand to the Secretary." *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "For new evidence to be material, there must exist the 'reasonable possibility that it would have changed the outcome of the Secretary's determination.'" *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). "Implicit in the materiality requirement . . . 'is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (quoting *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)); *see also Latham*, 36 F.3d at 483. To demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989); *Skalij v. Chater*, 103 F.3d 126, 1996 WL 731580, at *3 (5th Cir. Dec. 4, 1996).

Plaintiff's argument that the MRI test result requires remand fails for several reasons. First, the evidence is not "new." The MRI was conducted on August 16, 2007, and plaintiff offers no reason why she failed to produce it to the ALJ at the February 27, 2008 hearing. *See Skalij*, 1996 WL 731580, at *3. While plaintiff submitted it to the ALJ via correspondence before the ALJ ruled, plaintiff has cited to no authority – and this Court has found none – that would consider evidence that existed before the administrative hearing as "new."

More importantly, this Court finds that the MRI test result also is not "new" in that it is entirely cumulative of evidence already in the record. *Pierre*, 884 F.2d at 803 ("In order to justify a remand, the evidence must first be 'new,' and not merely cumulative of what is already in the record."). Here, and as already noted above, on September 23, 2002, Dr. Mossadiq Jaffri characterized plaintiff's earlier 2002 lumbar spine diagnostic test as showing significant extradural defects at L2-L3 and L4-L5 with effacement of the thecal sac most prominent at the L4-L5 intervertebral discs. (Adm. Rec. at 274). In an earlier report, dated September 4, 2002, Dr. Jaffri had noted that plaintiff's EMG testing was completely normal and that there was "[n]o electrophysiological evidence of radiculopathy with normal electrophysiological parameters." (*Id.* at 281). Earlier lumbar myelography, reported by Dr. Lawrence Glorioso, revealed extradural defects at L2-L3 and L4-L5 with effacement of the thecal sac most prominent at the L4-L5 intervertebral discs. (*Id.* at 283-84). A postmyelography CT examination revealed eccentric bulging of the L4-L5 intervertebral disc toward the right side with effacement of the thecal sac. (*Id.* at 284). The same examination revealed no nerve root compromise. (*Id.*).

The MRI reveals no disk herniation at the L1-L2 level. The MRI demonstrates bulging of the L2-L3 disk, with flattening of the ventral thecal sac and moderate bilateral facet arthropathy. The MRI reveals mild bulging of the L3-L4 disk with protrusion that was causing mild narrowing of the right neuroforamen compared to the left. At the L4-L5 disk, sever bilateral facet arthropathy was present with a grade 1 spondylolisthesis, some unroofing and mild disk bulging that resulted in moderate narrowing of the right neuroforamen and mild to moderate narrowing of the left neuroforamen. The L5-S1 disk revealed mild bulging and mild spondylosis and mild facet

11

degenerative changes. Both the evidence before the ALJ and the MRI test result reveal medical problems to the same extent and severity and to the same disks in plaintiff's back. Accordingly, the Court finds that the results of the MRI are cumulative of the opinion of Dr. Jaffi, which the ALJ had before him when he ruled.

In addition, plaintiff wholly fails to demonstrate that the ALJ would have arrived at a different conclusion had he known of the MRI result. *See Dziuk v. Barnhart*, 67 Fed. Appx. 248, 2003 WL 21145745, at *1 (5th Cir. May 1, 2003). Apart from the conclusory statement that, "[c]learly the claimant's aforementioned lumbar impairment is more severe than noted in both of Judge Bundy's unfavorable decisions," there is no argument as to how the MRI test result would have induced the ALJ to arrive at a different conclusion.

Lastly, plaintiff wholly fails to demonstrate good cause for not having presented this evidence earlier in the proceeding. *Pierre*, 884 F.2d at 803. Plaintiff provides this Court with no excusable explanation for having failed to do so. This argument must fail.[2]

**2. Whether the ALJ erred when he did not find that plaintiff has a severe mental impairment.**

The crux of plaintiff's argument here is that the ALJ committed error when he relied more heavily on the opinion of Dr. Cohen, the consultative physician, than on that of Dr. Bushman,

---

[2] On September 21, 2009, plaintiff filed two Motions for Leave to Add Exhibit to Motion for Summary Judgment [Doc. #17, 19]. This Court granted that motions as unopposed [Doc. #18, 20]. Plaintiff argues that the motions seek to "include New and Material evidence" that demonstrates that plaintiff has/may have had mild carpal tunnel syndrome on the right on February 4, 2004. The ALJ considered plaintiff's allegation that she has carpal tunnel syndrome in his June 26, 2008 Order. (Adm. Rec. at 18). The Court therefore finds that such evidence is neither "new" nor "material."

plaintiff's treating physician. For the following reasons, the Court rejects this argument.

The ALJ found:

> The claimant's medically determinable mental impairments of major depressive disorder, personality disorder, and chronic pain disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" limmitation in the fourth are, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(Adm. Rec. at 18).

The Court finds that the ALJ did not err when he placed "considerable weight" on the opinion of Dr. Cohen as opposed to that of Dr. Bushman. It is the responsibility and duty of the ALJ to determine the credibility of medical experts and to weigh their opinions accordingly. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). The ALJ alone is entitled to resolve any inconsistencies between various medical opinions. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

It appears that plaintiff argues that because Dr. Bushman was a treating physician, his opinion is entitled to greater weight than that of Dr. Cohen, a consultative examiner. The ALJ must follow the guidelines set forth in Social Security Report ("SSR") 96-2p to determine whether "controlling weight" should be given the medical opinions of a "treating source." These guidelines are that: (1) the opinion must come from a "treating source"; (2) the opinion must be a "medical opinion"; (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be

13

inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 92-2p.

The factors provided in 20 C.F.R. §§ 404.1527 and 416.927 include: (1) examining relationship; (2) treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) supportability; (4) consistency; and (5) specialization. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001); *Newton*, 209 F.3d at 456. Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore* v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990). However, specialization is only one of several factors considered in the evaluation of medical opinions. In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when substantial evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Moore,* 919 F.2d at 905. Indeed, even when a court should afford considerable weight to a treating physician's diagnosis, the "ALJ has sole responsibility for determining a claimant's disability status." *Newton*, 209 F.3d at 455 (citing *Greenspan*, 38 F.3d at 237).

First, this Court questions whether Dr. Bushman was plaintiff's treating physician, given that the Court can only find one instance of his examination of plaintiff in the record, and plaintiff cites the Court to no other. Notwithstanding this issue, the Court finds that the ALJ's considerable reliance on Dr. Cohen's medical opinion is supported by substantial evidence. Dr. Cohen ultimately opined that plaintiff's mental limitations were no more than physical and that mental restrictions were not significant and did not prevent her from returning to work. (Adm. Rec. at 401-03). This opinion is entirely consistent with the opinions of almost every other doctor in the record. Indeed, even though Dr. Bushman, on whom plaintiff ultimately relies, opined that plaintiff suffers from "a Pain Disorder associated with both Psychological Factors and a General Medical Condition, and from a Personality Disorder" and "long-standing Narcissistic, Schizoid, Histrionic and Paranoid personality features," he ultimately concluded that plaintiff was not psychologically disabled from working. (*Id.* at 257). The ALJ also found Dr. Cohen's opinion "consistent with a previous examining psychologist," whom the Court can only surmise is Dr. Bushman, the clinical psychologist at the Medical Musculoskeletal Institute. (*Id.* at 19). And, as noted above, a review of the relevant documents reveals that none of the doctors at St. Charles Community Health Center indicated that plaintiff experienced such significant cognitive defects that would interfere with her ability to work. (*Id.* at 492-500).

Accordingly, the Court cannot conclude that the ALJ erred when he placed greater reliance on the opinion of Dr. Cohen than that of Dr. Bushman. The opinion of Dr. Cohen is consistent with the other medical opinions – including Dr. Bushman's – that this Court has reviewed in the record and is supported by substantial evidence. The Court finds that the majority of the examining

physicians are consistent in their opinion that plaintiff's mental impairments – while they do exist – do not preclude her from working. The Court therefore rejects this argument.

### 3. Whether the ALJ erred when he failed to consult a vocational expert to determine her residual functional capacity ("RFC").

Plaintiff argues that the ALJ erred when he failed to consult a vocational expert "to evaluate how the claimant [sic] nonexertional limitations affect the light occupation work base." Plaintiff correctly notes that the ALJ – in his June 26, 2008 opinion – found that she can only occasionally climb ladders, ropes or scaffold and occasionally stoop and crouch. (Adm. Rec. at 19). However, the ALJ also found in the same opinion that the plaintiff is capable of performing her past relevant work as a sales associate. (*Id.* at 20).

It is well-settled law that the plaintiff bears the burden of proof on disability through the first four steps of the sequential evaluation process. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The fourth step of the sequential evaluation process provides that plaintiff must demonstrate that her impairment prevents her from returning to her past relevant work. *Shave*, 239 F.3d at 594. Here, plaintiff bore the burden and failed to carry it and presents this Court with no relevant record cite to medical evidence to undermine the ALJ's conclusion.

Moreover, it is well-settled law that an ALJ need not consult a vocational expert at step four of the sequential evaluation. *See Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) ("[The ALJ] specifically found that Harper was capable of performing past relevant work. The ALJ correctly did not apply the medical-vocational guidelines as they are to be applied only when it is found that the claimant is incapable of performing past relevant work. The lack of expert testimony therefore

16

becomes irrelevant." (citation omitted)); *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979) ("Vocational testimony is not necessary if the [ALJ] concludes that a claimant could return to his former occupation."). Accordingly, this argument lacks merit.

>   4.  **Whether the ALJ violated plaintiff's Due Process rights when he did not swear her in to testify at the supplemental hearing and the supplemental hearing was not before another ALJ.**

This case presents an unusual procedural quirk through which plaintiff asserts a Due Process violation under the Fourteenth Amendment of the United States Constitution. On May 25, 2007 – and at the request of plaintiff – the ALJ recalled and vacated his May 25, 2007 decision on the ground that plaintiff had sought a supplemental hearing and the ALJ had issued his opinion without first considering the request for a supplemental hearing. (Adm. Rec. at 547B). In that recall and vacate order, the ALJ ordered that "a new hearing will be scheduled with another Administrative Law Judge." (*Id.*).

On February 27, 2008, the same ALJ held the supplemental hearing. (*Id.* at 552-60). Plaintiff testified at the hearing, but plaintiff alleges that she was not sworn in to testify. (The transcript, however, notes that plaintiff was "duly sworn." (*Id.* at 556).)

Based on these two errors – that the hearing was allegedly to occur before a separate ALJ and plaintiff was not sworn in to testify – plaintiff asserts a Due Process violation. It is well-settled Fifth-Circuit law that "[p]rocedural perfection in administrative proceedings is not required. [A] court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (citing *Mays*). In other words, procedural improprieties will constitute a basis for remand

17

only if such improprieties cast doubt on the existence of substantial evidence to support the ALJ's decision. *Morris*, 864 F.2d at 335. Further, proof of a denial of due process in administrative prooceedings requires a showing of substantial prejudice. *Ka Fung Chan v. I.N.S.*, 634 F.2d 248, 258 (5th Cir. 1981); *see also Darnell v. Astrue*, Civ. A. No. 07-1404, 2009 WL 424794, at * 3 (W.D. La. Feb. 20, 2009) (citing *Ka Fung Chan*); *McKnight v. Astrue*, No. 07-1654, 2008 WL 4387114, at *8 (W.D. La. Aug. 15, 2008) (same).

The Court finds that plaintiff has not met her burden here and has failed to demonstrate a denial of substantial rights or substantial prejudice. On December 12, 2005, December 14, 2006, and February 27, 2008, defendant accorded plaintiff three hearings at which she testified and presented her evidence of disability. (Adm. Rec. at 14, 83). Plaintiff has submitted late evidence to both this Court and to the ALJ, which – although rejected – this Court and the ALJ accepted. The Court cannot find how defendant violated plaintiff's due process rights. There is no allegation here that the ALJ failed to conduct a hearing. Indeed, there is no allegation here that the ALJ *prevented* plaintiff from testifying or from presenting evidence at any of the hearings. That plaintiff was not sworn in at the February 27, 2008 hearing is of no moment – she, in fact, testified, and the ALJ took her comments under consideration. Plaintiff points to no provision of law – and this Court has found none – that would entitle her to a fourth supplemental hearing on disability. Moreover, there exists no provision of law that would entitle plaintiff to a supplemental hearing in front of a separate and distinct ALJ, notwithstanding the ALJ's statement – and most likely clerical error – in his recall-and-vacate Order dated May 25, 2007. Accordingly, this argument is meritless.

## VII.  CONCLUSION

Plaintiff has failed to show that the ALJ's RFC assessment is not supported by substantial evidence or that the ALJ erred in any fashion. Substantial evidence supports the ALJ's finding that plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the determination. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 4th day of December, 2009.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**